IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AMERICAN PROTECTION INSURANCE COMPANY; and DOES 1-20, inclusive,<br><br>　　　　　Defendants. | 1:11-CV-01865-AWI-SKO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ACTION** |

## I. INTRODUCTION

Defendant American Protection Insurance Company has filed a motion to dismiss the complaint or stay the action in recognition of a Rehabilitation Order entered against Defendant in Illinois. For reasons discussed below, the motion to dismiss shall be granted.

## II. FACTS AND PROCEDURAL BACKGROUND

On November 9, 2011, Plaintiff American Alternative Insurance Corporation ("AAIC" or "Plaintiff") filed a complaint in this Court against Defendant American Protection Insurance Company ("APIC" or "Defendant") seeking declaratory relief and equitable contribution for legal costs incurred by Plaintiff in the defense of an alleged mutual insured, Meadowbrook Water Company of Merced ("Meadowbrook"). Meadowbrook had been sued in the action *Affholter, et al. v. Franklin County Water District, et al.,* U.S.D.C. Eastern District of California, No. 1:07-CV-0388 OWW. The suit was tried to a defense verdict. Both parties in the instant action acknowledge that the defense of Meadowbrook was paid for entirely by Plaintiff. (Court

Document 17, at 3.) Plaintiff argues that Defendant owed (and continues to owe) a mutual duty to defend Meadowbrook because of insurance polices in effect between Defendant and Meadowbrook at the relevant times in question. (Court Document 1, at 3.) Plaintiff now seeks contribution from Defendant for, among other things, half the costs of defending the Meadowbrook suit. (Court Document 1, at 5-6.)

To complicate matters, on August 16, 2012, the Circuit Court of Cook County, Illinois, issued an order ("Rehabilitation Order") placing American Motorists Insurance Company ("Amico") into rehabilitation. (Court Document 17, at 16-28.) The Rehabilitation Order included a provision enjoining "all other persons and entities...from bringing or further prosecuting any claim, action or proceeding at law or in equity or otherwise, in this State or elsewhere" against Amico. (Court Document 17, at 14.) The Rehabilitation Order further appointed Illinois' Director of Insurance as the statutory rehabilitator of Amico. Defendant APIC had merged into Amico in 2004. (Court Document 17, at 1.) Based upon this, on September 24, 2012, Defendant APIC filed this motion to dismiss or stay the current action, arguing that this Court must honor the Illinois Rehabilitation Order and decline jurisdiction over the matter. On or about September 10, 2012, Plaintiff AAIC filed an opposition to Defendant's Motion to Dismiss.

### III. DISCUSSION

Defendant APIC urges the Court to dismiss this action in recognition of the Rehabilitation Order issued against it in Illinois, and in deference to the principle of reciprocity embodied in the Uniform Insurers Liquidation Act ("UILA"). Defendant argues that:

> "Reciprocal states are afforded special treatment under the UILA. In particular, reciprocal states, such as California here, honor sister state orders by courts in other reciprocal states (here, Illinois) enjoining further proceedings against an insurer ordered into rehabilitation, and dismiss or stay pending actions against insurers in rehabilitation or liquidation."

(Court Document 17, at 2.) Plaintiff AAIC, on the other hand, urges the Court to retain

2

jurisdiction over the matter, and argues that:

> "[C]alifornia law does not require enforcement of an out-of-state order abating proceedings issued subsequent to an Order for Rehabilitation. While California has enacted the provisions of the Uniform Insurance Liquidation Act, *Cal. Ins. Code §§1061 et seq.*, the Ninth Circuit's decision in *Hawthorne Savings F.S.B. v. Reliance Insurance Company of Illinois,* 421 F.3d 835 (2005), makes clear that jurisdiction remains squarely before this Court."

(Court Document 18, at 2.)  An analysis of Defendant's motion to dismiss must therefore begin with an examination of the UILA and its significance to the current action.

**A. THE UNIFORM INSURERS LIQUIDATION ACT**

Both parties acknowledge that California and Illinois have each enacted the UILA, which governs insurance companies that have assets and liabilities located in multiple states.  (See California Insurance Code, §1064.1 *et seq.*; Illinois Insurance Code, § 215 ILCS 5/187 *et seq.*)  Among other things, the UILA "[is] intended to resolve conflict of law questions arising during an insurance insolvency proceeding and to coordinate proceedings filed in more than one state." *Reliance v. Hernandez,* 2003 WL 22064371 (Cal.App. 5 Dist.) (unpublished).[1]  To accomplish this, the UILA provides a uniform and equitable means of making and processing claims against an insurer who is under a rehabilitation order in its domiciliary state, and provides for the equitable distribution of the insurer's assets.  This goal of uniformity among the states is reflected in the statutes of both California and Illinois.  In California, section 1064.12(b) of the statute states: "The Uniform Insurers Rehabilitation Act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states that enact it." Cal. Ins. Code, § 1064.12(b).  Section 221.10 of the analogous Illinois statute similarly provides its purpose "is to promote uniformity in the liquidation, rehabilitation, reorganization or conservation of

---

[1] Plaintiff states that consideration of *Reliance* and other unpublished cases is inappropriate because they have no precedential value and cannot be cited by California courts.  However, this Court is not bound by California's rule against citation to unpublished cases, and may consider unpublished California appellate cases as persuasive authority.  *See Employers Insurance of Wausau v. Granite State Insurance Company,* 330 F.3d 1214, 1220 n. 8.

3

insurers doing business in more than one state." 215 ILCS 5/221.10.  A central goal of the UILA, then, is reciprocity.  Member states recognize and honor the rehabilitation orders issued by other member states so that insurance companies domiciled in those states are liquidated in a uniform, orderly and equitable manner without interference from external tribunals.

Both parties acknowledge that California and Illinois are reciprocal states under the UILA. This places a special duty upon the courts of each state.  "Under the [UILA], California courts must enforce and honor the orders of a sister state court made in connection with the liquidation of an insolvent insurance company domiciled in a reciprocal state, i.e., one which has likewise adopted the provisions of the Uniform Act, unless California appoints its own ancillary receiver to marshal assets present in this state.  Even in this circumstance, however, a great deal of deference must be given to orders of the domiciliary state. [Citations.]" *Reliance v. Hernandez,* 2003 WL 22064371 at *3.  According to moving papers submitted by both parties, an ancillary receiver has not been appointed in California.  The issue then becomes what effect California's membership in the UILA, and its status as a reciprocal state with Illinois, has on the current action involving an insolvent insurance company from Illinois.

Central to a discussion of the effect, if any, this Court must give to the Rehabilitation Order is an understanding of the case in light of the distinction between *in personam* and *in rem* actions, which are described as follows:

> "Actions are, as to their object, either in personam or in rem.  An action in personam has for its object a judgment against a person, as distinguished from an action in rem that has as its object a judgment determining the status of property. If the entire object of the action is to determine the personal rights and obligations of the defendants, then the suit is in personam; but if the object is to determine rights in specific property as against all the world, the action is in rem." (Citations omitted.)

(1A Cal.Jur.3d Actions § 30.)  As a "judgment against a person," an *in personam* action carries no specific means of enforcement or collection, no attachment of an identified *res* that plaintiff is entitled to enforce upon a victory in court.  His claims against that defendant are reduced to a judgment and his rights as to that action become legally established, but plaintiff may be required

to bring a subsequent action in order to enforce that judgment and those rights.  On the other hand, as a "judgment determining the status of property," an action *in rem* is directed against the *res* and renders a judgment as against the world with respect to that property.  In such a case, a judgment in favor of plaintiff would mean disposal of the property itself under order of the court, without requiring plaintiff to bring a subsequent action to enforce that judgment.

   The Ninth Circuit drew upon this distinction in analyzing a suit of contract-based claims brought against a non-domiciliary insurer placed under a rehabilitation order, describing the action as one for "in personam legal rights, as opposed to the enforcement of any resulting judgment[.]" *Hawthorne Savings F.S.B. v. Reliance Insurance Company of Illinois,* 421 F.3d 835, 854 (9th Cir. 2005).  The court emphasized the difference between *in personam* actions to obtain a judgment and *in rem* actions to enforce or collect upon a judgment. *Ibid*., at 851-55.  In that case, the financial corporation Hawthorne filed suit in California superior court against its Pennsylvania insurer, Reliance, for, among other things, compensation for Hawthorne's defense of a lawsuit arising from a loan.  Reliance removed the suit to the U.S. District Court for the Central District of California based upon diversity.  As the suit was pending, Reliance was placed under a Rehabilitation Order in Pennsylvania, which stated in part that "[a]ll actions, including arbitrations and meditations, currently pending against Reliance in the courts of the Commonwealth of Pennsylvania or elsewhere are hereby stayed." *Ibid.,* at 840.  This order was then supplanted by actual liquidation proceedings.  As these were ongoing, Reliance moved to dismiss the lawsuit "on the ground that the liquidation order vested the Pennsylvania Commonwealth Court with 'exclusive' jurisdiction over claims against Reliance and enjoined any continued prosecution of claims against Reliance in other fora." *Ibid*.  The district court denied the motion to dismiss.  Eventually the case went to trial, culminating in a jury verdict in favor of Hawthorne and a total award of more than $1 million.  Reliance appealed to the Ninth Circuit, arguing that the district court should have discontinued to exercise jurisdiction over the suit once the Pennsylvania court commenced liquidation proceedings.

As a foundation for its analysis, the *Hawthorne* court asked, "What *would* a state court do, were it in our position?" *Ibid.,* at 852 (emphasis in original). It then applied California law to determine whether the district court was obligated to honor the UILA and the Pennsylvania rehabilitation order.[2] In analyzing California's obligations under the UILA, the court looked to the statutory language of California's codification of the UILA, in particular the restrictions placed on plaintiffs regarding actions against insolvent insurers domiciled in reciprocal states. As relevant here, section 1064.9 of the California Insurance Code states that "[d]uring the pendency of delinquency proceedings in this or any reciprocal state, no action or proceeding in the nature of an attachment, garnishment, or execution shall be commenced or maintained in the courts of this state against the delinquent insurer or its assets." (Cal. Ins. Code, § 1064.9.)

The determinative language in this section, the *Hawthorne* court found, was "attachment, garnishment, or execution," because it served to distinguish the specific types of actions the state intended to proscribe. In particular, the court found that this language addressed suits *in rem* and not suits *in personam. Hawthorne,* 421 F.3d at 854-55. The court cited the Minnesota Supreme Court case of *Fuhrman v. United America Insurors,* 269 N.W.2d 842 (Minn.1978) for the proposition that *in personam* actions against an insolvent insurer, like the one before it, did not offend the terms of California's Insurance Code:

> " '[N]ot every suit brought against a receivership defendant is deemed to interfere with the res. The distinction is commonly made between the liquidation of a claim and the enforcement of the claim after it has been reduced to judgment. Thus, an action in personam to establish the extent of an insolvent's liability on a claim is held not to interfere with the receivership res. By the same token, any attempted attachment or levy against the res made in connection with a judgment is normally in rem and directly opposed to the court's dominion over the res. Accordingly, an in personam action against the receivership defendant need not be brought in the receivership court.' "

*Hawthorne,* 421 F.3d at 855 (quoting *Fuhrman,* at p. 846). The Ninth Circuit determined such an action before it was not in the nature of an attachment, garnishment, or execution, and therefore a

---

[2] Although Pennsylvania is not a reciprocal state under the UILA, the court determined that the California Supreme Court would consider it such under California law, and thus proceeded on that basis. *Ibid,* at 854.

6

judgment against the insolvent insurer would not interfere with the liquidation proceedings. Thus, the suit could proceed without violating California's terms of reciprocity under the UILA.

The action in the instant case is of the same type as that in *Hawthorne*. Thus, a judgment in favor of Plaintiff AAIC would also not be in the nature of an attachment, garnishment, execution, or any other action that could conceivably interfere with the Rehabilitation Order issued against Defendant APIC in Illinois. As in *Hawthorne,* Plaintiff here seeks contribution and declaratory relief, but does not seek attachment or levy against any *res* made in connection with a judgment. As an *in personam* action, it would be a claim reduced to judgment, which would not interfere with the receivership *res* or with the liquidation proceeding as contemplated by section 1064.9 of the California Insurance Code. Accordingly, section 1064.9 does not compel dismissal of this action.

## B. RELATIONSHIP BETWEEN SECTIONS 1064.5 AND 1064.9 OF THE CALIFORNIA INSURANCE CODE

In its motion, Defendant argues that the *Hawthorne* court erred by not addressing section 1064.5 of the California Insurance Code, which Defendant contends supersedes section 1064.9 and renders the court's decision invalid. (Court Document 17, at 15.) At first glance, this appears to be a compelling argument. Section 1064.5 reads in relevant part:

> "(a) In a delinquency proceeding in a reciprocal state against an insurer domiciled in that state, claimants against such insurer who reside within this state may file claims either with the ancillary receiver, if any, appointed in this state, or with the domiciliary receiver. All such claims shall be filed on or before the last date fixed for the filing of claims in the domiciliary delinquency proceeding.
>
> (b) Controverted claims belonging to claimants residing in this state may either (1) be proved in the domiciliary state as provided by the laws of that state, or (2), if ancillary proceedings have been commenced in this state, be proved in those proceedings."

Standing alone, this section appears to suggest that any party seeking to bring a claim against a delinquent insurer (as Plaintiff seeks to do here) must file its claim in the rehabilitation proceeding, and may not assert an action in court. The word "may" in part (a) of the statute seems

to restrict the choice of fora to one of the two possible receivership proceedings (the domiciliary or ancillary), and to foreclose any choice between receivership proceedings or, as here, judicial proceedings. Defendant relies upon section 1064.5 to argue this very point:

> "These provisions make clear that any claims American Alternative might have are to be resolved either (i) in the Illinois proceeding, or (ii) in a proceeding in California ***only if*** an ancillary receiver has been appointed. An ancillary receiver has not been appointed in this case, and California law, despite *Hawthorne,* requires American Alternative to make and prove its claim in Illinois." (Italics and bold in original.)

(Court Document 17, at 15-16.) In the Court's view, Defendant's interpretation of, and reliance upon, section 1064.5 is erroneous because it renders section 1064.9 superfluous. If, as Defendant contends, section 1064.5 provides that all actions *can only* be brought in one of the two receiverships, then it would be redundant for section 1064.9 to state that certain types of actions cannot be brought in court. The Court declines to read this type of superfluousness into the Code.

It is a fundamental tenet of statutory interpretation that courts must read statutory text in such a way as to avoid superfluities. *Kawashima v. Holder,* 615 F.3d 1043, 1048 (9th Cir.2010). *Kawashima* summarizes this doctrine as follows:

> "[Courts] are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. [Citations.]"

*Kawashima,* 615 F.3d at 1048. The Court's interpretation of the California Insurance Code must therefore be premised upon the idea that the California Legislature did not intend to cause section 1064.9, or any other section of the Code, to be superfluous. And, indeed, it is not. The mere fact that section 1064.9 lists the types of actions that *cannot* be brought in court presupposes that there are other types of actions that *can* be brought in court. This is not a contradiction of section 1064.5 because that section describes actions that may be brought in the receiverships, while section 1064.9 describes actions that may or may not be brought in court. Section 1064.5, then, is a permissive statute that allows claimants to file any type of claim with one of the two appropriate receiverships. Section 1064.9, on the other hand, dictates that, *should a claimant wish to bring an action in court*, he is proscribed from bringing one in the nature of an attachment, garnishment, or

8

execution. Defendant's assertion that the California Insurance Code forces Plaintiff here to bring its claim only in one of the two receiverships cannot be correct and the Court rejects it.

This does not, however, foreclose other potential avenues of dismissal. Although the UILA, (including California's version of it), as well as Ninth Circuit case law, does not prohibit this Court from hearing the present action, neither does it compel this Court to hear it. Under the doctrine of comity, it is within the Court's discretion to give full weight and effect to the Rehabilitation Order issued by the Illinois court and to decline jurisdiction, as discussed below.

**C. COMITY**

Because a primary goal of the UILA is reciprocity among states, courts have applied the doctrine of comity to the issues presented in this case. Comity is founded upon the principle of governmental reciprocity, which the California Supreme Court has described as:

> "[T]he belief " ' "that the laws of a state have no force, *proprio vigore,* beyond its territorial limits, but the laws of one state are frequently permitted by the courtesy of another to operate in the latter for the promotion of justice, where neither that state nor its citizens will suffer any inconvenience from the application of the foreign law. This courtesy, or comity, is established, not only from motives of respect for the laws and institutions of the foreign countries, but from considerations of mutual utility and advantage." ' ... 'The mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids.' " (citing *Estate of Lund,* 26 Cal.2d 472, 489 (1945).)

*Advanced Bionics Corp. v. Medtronic, Inc.,* 29 Cal.4th 697, 707 (2002). The extension of comity, either to the laws or judicial decisions of another state, is not legally mandated but is entirely voluntary for the court in each case before it, subject only to constitutional limitations. California courts have exercised that discretion to decline to hear actions against non-domiciliary insurers subject to rehabilitation orders. *See, e.g., Reliance Insurance Company v. Hernandez,* 2003 WL 22064371 (Cal.App. 5 Dist.) (unpublished); *Serio v. Superior Court,* 2002 WL 31794160 (Cal.App. 4 Dist.) (unpublished); *Osijo v. Home Insurance Company,* 2004 WL 1966027 (Cal.App. 5 Dist.) (unpublished); *Osijo v. Sevigny* (2006) WL 3616431 (Cal.App. 5 Dist.) (unpublished).

In *Reliance Insurance Company v. Hernandez,* 2003 WL 22064371 (Cal.App. 5 Dist.), the Fifth District Court of Appeal extended comity to a liquidation order issued against the defendant in Pennsylvania, which is not a reciprocal state.  In that case, plaintiff Hernandez was a California motorist covered under a vehicle insurance policy issued to his employer by defendant Reliance Insurance Company, domiciled in Pennsylvania.  Following an accident and injury, plaintiff made a claim against Reliance for payment under the uninsured motorist provisions of the Reliance policy.  Reliance filed a complaint for declaratory relief in the trial court, but as that action was pending, Reliance was declared insolvent by the Commonwealth Court of Pennsylvania and placed under an order of liquidation.  Hernandez than filed a cross-complaint, naming as defendants, among others, Reliance and the Insurance Commissioner of Pennsylvania.  Reliance demurred on the grounds that the action was barred by the Pennsylvania court's order of liquidation, and the trial court sustained the demurrer.  The appellate court affirmed despite Pennsylvania's lacking reciprocal status under the UILA:

> "Although California is not compelled by its own laws, or by the federal constitution, to give full faith and credit to the anti-suit provision of the Pennsylvania Liquidation Order, public policy consideration and the similarities between the Pennsylvania Act and California's own laws regarding insolvent insurers supports the trial court's decision to give the Pennsylvania order effect in California. ...
>
> In sum, given California's adoption of statutes which acknowledge and promote the meritorious principle that claims against an insolvent insurer should be adjudicated and resolved in a single forum, and given the existence of equivalent Pennsylvania legislation, we cannot say the trial court abused its discretion in applying the principle of comity to the Pennsylvania Order of Liquidation and its antisuit injunction."

*Reliance Insurance Company,* 2003 WL 22064371 at *5.

We find the appellate court's emphasis on public policy compelling.  California's adoption of the UILA reflects this state's strong public interest in the orderly administration of insolvencies in the insurance business, regardless of the administrative state, in order to guarantee that policyholders in this state will be treated fairly. *Reliance Insurance Company,* at *5 (citing *Garamendi v. Executive Life Ins. Co.,* 17 Cal.App.4th 504, 515 (1993)).  Illinois, in turn, has the same public interest.  It hardly seems a fitting means of achieving those public policy

considerations by refusing to honor an order of rehabilitation issued by a sister court of competent jurisdiction. In that light, it is worth noting that the Agreed Order of Rehabilitation, issued by the Circuit Court of Cook County, Chancery Division, does even not distinguish between *in personam* and *in rem* actions but instead enjoins *all* actions against the insolvent insurers, a fact that is not lost on this Court. The Order reads:

> "[A]ll other persons and entities having knowledge of this Order are restrained and enjoined from bringing or further prosecuting *any claim, action or proceeding at law or in equity or otherwise*, whether in this state or elsewhere, against AMICO, or their property or assets, or the Director or Rehabilitator, except insofar as those claims, actions or proceedings arise in or are brought in these rehabilitation proceedings." (Emphasis added.)

(Court Document 17, Exhibit B, at 49.) Admittedly, Illinois has adopted a version of the UILA that reads very much like California's section 1064.9, and thus the Illinois court appears to widen the scope of prohibited actions in its Order. This is of no consequence. The Court does not find this language dispositive for the purposes of statutory interpretation, or for an analysis of the current action as an *in personam* proceeding. However, the Court does find it compelling in analyzing the doctrine of comity. The notion of reciprocity, as promulgated by the UILA, would be utterly vitiated if the Court were to view a court order from a reciprocal state through the filter of our own laws and ultimately reject it. Viewed that way, California insurers might very well enjoy a high level of protection within the borders of some states while the insurers from those same states could face the perils of California's rigid adherence to statutory language. This is contrary to the purpose of the UILA, an agreement that California freely entered into with those very states.

In sum, the Court agrees in part with the *Hawthorne* court and finds the current action to be in the nature of an *in personam* proceeding, and thus one that does not offend the terms of the UILA as adopted by both California and Illinois. Nevertheless, this does not preclude the Court's consideration of the underlying principle of the UILA, which is reciprocity among the states in these types of circumstances. The extension or denial of comity is discretionary, and, with that in mind, it is important to emphasize what *Hawthorne* does and does *not* support. It does not

11

support the proposition that, under the circumstances of both that case and the present case, a federal district court is precluded from declining to exercise jurisdiction in an action for contribution against an insurer who is insolvent and in rehabilitation where jurisdiction exists.  It simply supports the proposition that it is not an abuse of discretion if a federal court elects to retain jurisdiction under those circumstances.  In *Hawthorne,* the Ninth Circuit was hearing the appeal of a case that had already been tried to judgment in the district court.  The court was reviewing the district court's denial of a motion to stay the case under an abuse of discretion standard, as emphasized in its holding: "[B]ecause we review the district court's decision *not* to abstain for an abuse of discretion, *see ante* at 844 n.8, we hold that the district court's refusal to abstain was not an abuse of discretion." *Hawthorne,* 421 F.3d at 848-49.  The court was *not* saying that a district court is *compelled* to hear a case in which a defendant is under a rehabilitation order issued by a reciprocal state if jurisdiction is otherwise proper.  Given California's adoption of statutes acknowledging and promoting the principle that claims against an insolvent insurer should be adjudicated and resolved in a single forum, and given the existence of equivalent Illinois legislation, the Court finds it appropriate to apply the principle of comity to the Illinois Rehabilitation Order and to exercise discretion to decline jurisdiction over this action here.

### IV. DISPOSITION

Based on the foregoing, Defendant's motion to dismiss is GRANTED without leave to amend.  Because there is only one named defendant, this action is hereby DISMISSED without prejudice, and the Court respectfully directs the Clerk of Court to close the case.

IT IS SO ORDERED.

Dated:   March 22, 2013                                            _____
                                                                                        SENIOR  DISTRICT  JUDGE

12